IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

| | | |
|---|---|---|
| NICHOLAS J. DAVIS, ADC #128996 | * * * | |
| Plaintiff, | * | |
| v. | * * | No. 2:22-cv-00089-JJV |
| GAYLON LAY, Warden, Arkansas Division of Correction, *et al.* | * * * * | |
| Defendants. | * | |

**MEMORANDUM AND ORDER**

**I.   INTRODUCTION**

Nicholas J. Davis ("Plaintiff") is a prisoner in the East Arkansas Regional Unit of the Arkansas Division of Correction ("ADC") who has filed a *pro se* Complaint seeking relief pursuant to 42 U.S.C. § 1983. (Doc. 2.) Plaintiff alleges that on April 14, 2020, Defendants Warden Gaylon Lay, Major Kenyon Randall, Deputy Warden Emmer Branch, Deputy Warden James Dycus, Major Jeffery Dean, and Major Randy Shores authorized correctional officers to use excessive force against him during an inmate protest. Plaintiff brings these claims against Defendants in their official and personal capacities. And he seeks monetary damages as well as injunctive relief. All other claims have been previously dismissed without prejudice. (Doc. 6.) And the parties have consented to proceed before me. (Doc. 20.)

Defendants have filed a Motion for Summary Judgment arguing they are entitled to dismissal pursuant to the doctrines of sovereign and qualified immunity. (Docs. 26-28.) Plaintiff has not filed a Response, and the time to do so has expired. Thus, the facts in Defendants' Statement of Undisputed Facts (Doc. 27) are deemed admitted. *See* Local Rule 56.1(c); *Jackson*

*v. Ark. Dep't of Educ., Vocational & Tech. Educ. Div.*, 272 F.3d 1020, 1027 (8th Cir. 2001). After careful review and for the following reasons, the Motion for Summary Judgment is GRANTED, Plaintiff's excessive force claim is DISMISSED with prejudice, and this case is CLOSED.

## II.    SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of W. Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III. FACTS

The relevant facts, which have been deemed admitted and are supported by the record, are as follows. (Docs. 27 and attachments.) On April 13, 2020 at approximately 10:30 p.m., inmates in barrack 8, which is where Plaintiff was living, began a protest about the chow process taking too long and other procedures that were established to address the COVID-19 pandemic.[1] An hour later, the protest intensified with inmates in barrack 8 breaking state property and prisoners in barracks 1, 2, and 7 getting angry.

Around midnight, Warden Lay and Deputy Warden Dycus arrived at the prison. Defendant Dycus went to barrack 8 and spoke to Hernandez, who was the leader of the protest. After listening to his demands, Defendant Dycus gave a direct order to all inmates in barrack 8 to get on their racks so officers could enter. A few prisoners, including Plaintiff complied. But the majority did not. Hernandez then told Defendant Dycus the protest would not stop until Warden Lay was replaced. Inmates in barracks 1, 2, 7, and 8 then started breaking out the windows and throwing locks, batteries, and other items at ADC officers. At some point, Plaintiff asked to be let out of barrack 8, but it was not safe at that time to open the door. Warden Lay then went to barrack 8, and tried to diffuse the situation, but he was unsuccessful. Then, pursuant to ADC protocol, Warden Lay returned to his office and called Major Shores, who is the Emergency Preparedness Administrator for the ADC.

Defendant Shores activated the Emergency Response Team ("ERT") and the Central K9

---

[1] Barrack 8 is a large, two story, open barrack that holds approximately fifty to sixty prisoners. (Doc. 27-1 at 12, 17-19.)

3

Unit, which arrived at the EARU in the early morning hours of April 14, 2020.[2] Major Shores and Deputy Warden Dycus went reported to barrack 8, where inmates had barricaded the door with a rack and were refusing to allow officers to enter, while the inmates in barrack 7 were becoming more volatile. Major Shores, who had response teams assembled around the barracks and in the hallway, directed the inmates in barrack 8 to unbarricade the entrance and allow the inmates who were not involved in the protest to come out. None of the non-protesting inmates on their racks tried to exit the barrack. Major Shores then ordered all inmates in barrack 8 to get on their racks and said chemical agents would be used if they refused to do so. And he gave the protestors five minutes to discuss it. Instead of complying with that order, the protesting inmates added more racks to the barricade and flooded the floor with soap and water. Meanwhile, the inmates in barrack 7 started breaking and covering their windows, and they set a fire in the control booth through the mail slot. When Major Shores returned to barrack 8, Hernandez said it was clear his demands were not going to be met, and he refused to further talk with the officers.

Around 2:00 a.m., Deputy Shores authorized non-party officers to deploy stinger grenades to distract the inmates and force them to move away from the entrance so that officers could enter barrack 8.[3] In response, many of the inmates in barrack 8 moved into the bathroom area. At that point, non-party officers broke out a window on the top and lower tiers of barrack 8 and threw in

---

[2] All officers in the Central K9 Unit receive annual training and certification from the Center for Law Enforcement Standards and Training. And all ERT officers must complete forty hours of tactical response training. (Doc. 27.)

[3] Stinger grenades are less-lethal munitions that are hard rubber shells containing rubber balls that explode in a fifty foot radius. When an expelled ball hits a prisoner, it feels like being stung. (Doc. 27.)

four canisters of CS gas.[4] All of the inmates in barrack 8 then stopped resisting, submitted to restraints, and were escorted to the visitation area where they were evaluated by the medical team. Plaintiff did not report any injuries. And the examining nurse did not detect any injuries or breathing difficulties. The following day, on April 15, 2020, Plaintiff filed a sick call request claiming he was shot in the back of the head by an unknown object as he was laying on his rack or on the floor. Plaintiff said he had a visible knot on the back of his head, pain, and headaches. However, when he was examined by a nurse on April 17, 2020, Plaintiff denied having any current pain, headaches, blurred vision, dizziness, or neurological abnormalities. The nurse then gave Plaintiff a prescription for 325 mg of Tylenol for three days.

IV.  **ANALYSIS**

　　A.  **Official Capacity Claims**

Sovereign immunity precludes the recovery of monetary damages from state officials acting in their official capacities, unless the state has waived its immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016). Defendants Lay, Randall, Branch, Dycus, Dean, and Shores are state officials. And, the State of Arkansas has not waived its Eleventh Amendment immunity. *Burk v. Beene*, 948 F.2d 489, 493-94 (8th Cir. 1991). Thus, they are entitled to sovereign immunity from Plaintiff's request for monetary damages against them in their official capacities.

Sovereign immunity does not apply to Plaintiff's requests for injunctive relief from Defendants in their official capacities. *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007); *Larson v. Kempker,* 414 F.3d 936, 939-40 (8th Cir. 2005); *Murphy v. Arkansas,* 127 F.3d

---

[4] CS gas, which is commonly referred to as tear gas, is a non-lethal gas that effects the eyes, nose, and sinuses making it temporarily difficult to breath.

750, 754 (8th Cir. 1997). But Plaintiff can only obtain "prospective" injunctive relief to remedy "ongoing" constitutional violations. *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002); *Entergy, Ark., Inc. v. Nebraska*, 210 F.3d 887, 898 (8th Cir. 2000) ("injunctive relief under *Ex Parte Young* cannot be premised on proof of past misconduct by the state"; instead, it is only available "where a plaintiff alleges an <u>ongoing</u> violation of <u>federal law</u>, and where the relief sought is <u>prospective</u> rather than retrospective") (emphasis in the original). In other words, to obtain prospective "injunctive relief, a plaintiff must show some substantial likelihood that past conduct alleged to be illegal will recur." *Sterling v. Calvin*, 874 F.2d 571, 572 (8th Cir. 1989).

In the Complaint, Plaintiff asks for a permanent injunction requiring Defendants to "cease use of chemical agents on any inmate that poses no risk to staff, other inmates, or himself, or any one that has been secured or restrained by handcuffs or shackles." (Doc. 2 at 6.) I conclude that request is improper for several reasons. First and foremost, as will be explained later in this Memorandum and Order, I find no evidence of a constitutional violation entitling Plaintiff to any form of relief. Second, Plaintiff's request is improper because it includes prisoners who are not parties to this lawsuit. *See* 18 U.S.C. § 3626 (prospective injunctive relief "in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a <u>particular</u> plaintiff") (emphasis added). Finally, Plaintiff has not presented any evidence demonstrating a substantial likelihood that chemical agents will be used against him in the future. Because Defendants are entitled to sovereign immunity and Plaintiff cannot obtain the injunctive relief he seeks, his official capacity claims are dismissed with prejudice.

### B. Individual Capacity Claims

Defendants argue they are entitled to qualified immunity from the excessive force claim

raised against them in their individual capacities. Qualified immunity protects government officials from § 1983 liability for damages if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019); *Irvin v. Richardson*, 20 F.4th 1199, 1204 (8th Cir. 2021). Whether qualified immunity applies to the case at hand is a question of law, not fact, for the court to decide. *Kelsay v. Ernest,* 933 F.3d 975, 981 (8th Cir. 2019). Defendants are entitled to qualified immunity if: (1) the evidence, viewed in the light most favorable to Plaintiff, does not establish a violation of a constitutional right; or (2) the constitutional right was not clearly established at the time of the alleged violation, such that a reasonable official would not have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *MacKintrush v. Pulaski Cty. Sheriff's Dep't*, 987 F.3d 767, 770 (8th Cir. 2021). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson* 555 U.S. at 236; *Mogard v. City of Milbank*, 932 F.3d 1184, 1188 (8th Cir. 2019). Defendants argue they are entitled to qualified immunity under the first prong. And I agree.

The Eighth Amendment prohibits prisoners from being subjected to cruel and unusual punishment. To establish an Eighth Amendment violation, there must be evidence suggesting Defendants used force "maliciously and sadistically to cause harm" rather than in "a good-faith effort to maintain or restore discipline." *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010); *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017). The relevant factors that must be considered when making this determination are: (1) the objective need for force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by the defendants; (4) any

efforts by defendant to temper the severity of the forceful response; and (5) the extent of the plaintiff's injuries. *Jackson*, 866 F.3d at 974; *Ward v. Smith*, 844 F.3d 717, 721-22 (8th Cir. 2016).

### 1. Defendants Lay, Randall, Branch, Dycus, and Dean

At the onset, it is undisputed Defendants Lay, Randall, Branch, Dycus, and Dean did not use or order the use of force on Plaintiff or the other inmates in barrack 8. Instead, Plaintiff seeks to hold them liable because they are supervisors. However, in a § 1983 action, supervisors cannot be held vicariously liable for the constitutional violations committed by their subordinates. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (the "general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support [§ 1983] liability"). Thus, a prisoner must establish that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. For instance, prison supervisors can be held liable if they deliberately fail to correct a known constitutional violation, lack of adequate training, or an unconstitutional policy or custom. *McGuire v. Cooper*, 952 F.3d 918, 922 (8th Cir. 2020); *S.M. v. Krigbaum,* 808 F.3d 335, 342 (8th Cir. 2015); *Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010).

But there is no such evidence here. Instead, it is undisputed that after the extensive negotiations ceased, Defendant Shores was the only official who authorized the use of force. Thus, I conclude Defendants Lay, Randall, Branch, Dycus, and Dean are entitled to qualified immunity and dismissal with prejudice of the excessive force claim raised against them in their individual capacities. *See Davis v. Lay*, No. 2:20-CV-00147 JM-PSH, 2022 WL 18107000 (E.D. Ark. Dec. 13, 2022), *rec. adopted,* 2023 WL 22606 (E.D. Ark. Jan. 3, 2023) (dismissing a prisoner's excessive force claim regarding the April 13-14, 2020 riot at the EARU against Defendants Lay,

Branch, and Dycus because they were not personally involved in the decision to use force in barrack 8).

### 2. Defendant Shores

It is undisputed Defendant Shores did not personally use force but, instead, authorized officers under his command to use stinger grenades and CS gas to regain control over barrack 8 and that an object from one of those devices inadvertently hit Plaintiff, who was not participating in the riot and was laying on his rack or the floor. Applying the factors mentioned above, I find Defendant Shores is entitled to qualified immunity for the following reasons.

As to the first three factors (objective need for force, amount of force used, and threat perceived by defendants), it is undisputed force was needed, for the protection of the inmates inside the barracks as well as the officers, to stop a quickly escalating, large scale, and violent disturbance in which inmates were throwing batteries and objects at officers, braking windows, destroying other state property, flooding the floor with soap and water, barricading the door with racks, and setting a fire in the control booth.

Regarding the fourth factor (efforts to temper the severity of the forceful response), it is also undisputed Defendant Shores instructed the non-participating inmates to get on their racks and tried to allow them to exit the barrack, gave the protesting inmates several opportunities to remove the barricade and end the disturbance, and warned all inmates order would be restored by force if they did not do so. Only after the rioting inmates refused and intensified their protests by further barricading the door, putting soap and water on the floor, and ceasing all communications with prison officials attempting to negotiate a peaceful resolution, did Defendant Shores authorize the use of stinger grenades and CS gas. And, once he did so, the violent protest ended and officers were able to enter and secure the barrack without further incident. As to the final factor, given the

severity of the disturbance Plaintiff's injury was remarkably minor.

From these undisputed facts, it is clear Defendant Shores authorized the use of force in "a good-faith effort to maintain or restore discipline" rather than "maliciously and sadistically to cause harm." *See Whitley v. Albers,* 475 U.S. 312, 322 (1986) ("wide-ranging deference" should be extended to prison security staff when responding to an "actual confrontation with riotous inmates," and the "existence of arguably superior alternatives" does not create a genuine issue of material fact); *Ward v. Smith,* 844 F.3d 717, 721 (8th Cir. 2016) ("Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, *i.e.,* they are using it maliciously and sadistically"); *Muhammad v. McCarrell*, 536 F.3d 934, 937-938 (8th Cir. 2008) (no excessive force when officers used OC spray, Stinger rubber ball grenades, tear gas, and other less-lethal devices to extract a barricaded inmate from his cell); *Rust v. Grammer,* 858 F.2d 411, 414 (8th Cir. 1988) (when there is no evidence of bad faith, courts should "accord prison officials great deference and will not substitute our judgment for theirs concerning the reasonableness of the alternative chosen to control a disruptive situation").

That being said, I am not unsympathetic to the fear Plaintiff must have felt being trapped inside a barrack with rioting inmates. And Plaintiff is credited for refraining from joining in the protest. Nevertheless, there is no evidence suggesting Defendant Shores acted sadistically and maliciously or with deliberate indifference when he determined, based on his professional training, it was not safe to open the door to barrack 8 to allow Plaintiff to escape. And I understand Plaintiff's frustration with being hit in the head with an object and exposed to CS gas when he was not participating in the violent protest. But, for the reasons just explained, it is beyond dispute that it was imperative for everyone's safety that officers regain control over barracks before the violence further escalated. The inadvertent and accidental injury Plaintiff sustained when officers

did so was at most negligence, which cannot be the basis for a § 1983 claim. *Whitley,* 473 U.S. at 319 ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause [when] . . . restoring official control over a tumultuous cellblock"); *Allen v. Kelley*, No. 5:17-CV-302-BRW-BD, 2020 WL 1695862 (E.D. Ark. Mar. 4, 2020), *rec. adopted,* 2020 WL 1697090 (E.D. Ark. Apr. 7, 2020) (granting qualified immunity when an ADC prisoner who was laying on the floor and not participating in a riot was inadvertently injured when officers used tear gas, stinger grenades, and less-than-lethal rounds to end a riot). Based on this undisputed evidence, there are no facts to support a finding Defendant Shores acted with malicious or sadistic intent. Accordingly, he is also entitled to qualified immunity on the excessive force claim raised against him in his individual capacity.

V. **CONCLUSION**

IT IS, THEREFORE, ORDERED that:

1. Defendants' Motion for Summary Judgment (Doc. 26) is GRANTED; Plaintiff's excessive force claim against Defendants Lay, Randall, Branch, Dycus, Dean, and Shores in their official and individual capacities are DISMISSED with prejudice; and this case is CLOSED.

2. It is certified, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from this Memorandum and Order, as well as the accompanying Judgment would not be taken in good faith.

DATED this 5th day of June 2023.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE